**Angelo R. AQUARO, Appellant,**

v.

**ZONING BOARD OF ADJUSTMENT OF THE CITY OF PHILADELPHIA and The City of Philadelphia.**

Commonwealth Court of Pennsylvania.

Argued Oct. 16, 1995.
Decided March 28, 1996.

---

Ralph M. Evans, for Appellant.

Cheryl L. Gaston, Assistant City Solicitor, for Appellee.

Before DOYLE and SMITH, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

This is an appeal by Angelo R. Aquaro from an order of the Court of Common Pleas of Philadelphia County, which affirmed a decision of the Philadelphia Zoning Board of Adjustment (ZBA) and granted Dr. John Del Gaiso a variance for the construction of a one-story addition to his property.

The pertinent facts are as follows: In 1990, Dr. Del Gaiso, a dentist, purchased a three-story property located at 1819 South Broad Street located in a Residential District (R–10) according to the Zoning Code for the City (Code). The previous owner of the property, also a dentist, utilized the first floor of the property as his dental office,[1] and the second and third floor as two apartments.[2] At the time of purchase, the property had a detached garage in the back of the house, which faced the side street, Watts Street. The front of the garage is flush with a concrete wall which encloses the backyard. A four foot covered corridor led from the back of the house to the garage.[3]

After Dr. Del Gaiso purchased the property he began operating his dental practice on the first floor, *and lived in the third floor apartment for two years,* until he moved elsewhere. After moving, however, he continued to operate his dentist office at the property.

Sometime before August 1991, Dr. Del Gaiso began repairs to his garage and the construction of a "quiet room." The quiet room was created by expanding the four foot corridor that led from the house to the garage by another four feet, which would then extend the entire back of the house to the garage. The room was designed to act as a waiting room for children with behavioral problems and to prevent them from disturbing other patients.

In August of 1991, the City of Philadelphia issued a "stop order" because Dr. Del Gaiso had failed to obtain a permit for the construction, and the work was discontinued. As a result, Dr. Del Gaiso applied to the Department of Licensing and Inspections (L & I) to legalize the erection of the one story addition and to legalize the use of his property for his dental practice since he no longer resided there.

L & I denied Dr. Del Gaiso's application finding that the erection of a one-story addition to his dental office violated the dimensional requirements of Section 14–211 and Section 14–231 of the Code, which require an open area of "not less than 30% of the lot area on intermediate lots" (537 square feet in this case), the minimum dimension of an inner court to be at least 8 feet, and the minimum area of an inner court to be at least 300 square feet.[4] L & I also denied the permit because the use of the first floor as a dental office violated Section 14–203 of the Code,[5] because Dr. Del Gaiso no longer re-

---

1. We are unable to discern from the record whether the previous owner resided on the property.

2. The two underlying decisions of the ZBA state that the dwelling had three apartments, but the testimony before the ZBA indicates that only two apartments currently exist. · However, a 1956 variance permitted three apartments and a dentist office to be located at the property. (8/1/56 variance; Reproduced Record (R.R.) at 80A.)

3. The garage has been on the property for nearly forty years. (4/28/94 ZBA opinion, Finding of Fact No. 9.)

4. The open area after Dr. Del Gaiso's addition would be only 197 square feet or 11% of the lot area; the minimum dimension of the inner court would be only 4 feet; and the inner court minimum area would be only 197 square feet. (4/28/94 ZBA opinion, Finding of Fact No. 2; R.R. at 28A.)

5. The uses permitted in an R–10 Residential District include uses permitted in the R–2 Residential District.

sided in the house. Section 14–203 states in relevant part:

### § 14–203 "R–2" Residential District [6]

(1) *Use Regulations.* The specific uses permitted in this district shall be the erection, construction, alteration or use of buildings and/or land for:

. . . .

(c) Office of doctors of medicine, osteopathy, dentistry . . . provided such office:

(.1) Shall be situated in the dwelling of the practitioner;

. . . .

(Section 14–203 of the Code.)

Dr. Del Gaiso then appealed to the ZBA and a hearing was held. Angelo R. Aquaro, Dr. Del Gaiso's adjacent neighbor, appeared at the hearing and objected to the variance. Mr. Aquaro testified that he did not want Dr. Del Gaiso expanding his office over the open space in the yard, nor converting the garage into an extension of his dental office. The ZBA, on October 14, 1992, granted the dimensional variance for the additional room, but the ZBA failed to address the issue pertaining to Dr. Del Gaiso's request for a use variance from the requirement under Section 14–203(1)(c)(.1), that he reside on the premises.

Mr. Aquaro appealed to the Court of Common Pleas for Philadelphia County which remanded the case for the limited purpose of establishing a record on the issue of "unnecessary hardship." On March 10, 1994, the ZBA again granted the variance only as to the dimensional requirements of the lot, again neglecting to even comment on the need for a variance from Section 14–203(1)(c)(.1). After the grant of the variance, Dr. Del Gaiso completed the addition and the conversion of the garage.[7] Mr. Aquaro again appealed and the court affirmed.[8] Now, Mr. Aquaro appeals to this Court.

On appeal, Mr. Aquaro argues that the ZBA erred in granting the variance because (1) Dr. Del Gaiso no longer resides on the property, and therefore, is prohibited from maintaining a dental practice at the property pursuant to Section 14–203 of the Code,[9] and (2) substantial evidence does not exist to support the finding that an unnecessary hardship exists. The appellees, the ZBA and the City of Philadelphia (collectively, the City), argue that Mr. Aquaro does not have standing to bring this appeal.[10]

### STANDING

The City asserts that Mr. Aquaro did not have standing to appeal the decision of the

---

6. The uses permitted under an area zoned R–2 are included in the permissive uses in areas zoned R–10. *See* Section 14–211 of the Code.

7. The plans submitted to the ZBA indicated that the garage was going to be used as part of the dental office. Dr. Del Gaiso testified that the garage would "be utilized to treat handicapped [and] for accessibility for the handicapped, and to treat the very young behavior management patients." (Notes of Testimony (N.T.) of 10/7/92 ZBA hearing at 21–22; R.R. at 155A–56A.) No variance was specifically sought for this change in use of the garage.

8. The court of common pleas also did not address Dr. Del Gaiso's request for a use variance to continue using his property as a dental office while not residing on the property.

9. Mr. Aquaro also argues that Dr. Del Gaiso is in violation of Section 14–203(1)(c)(.3) which prohibits more than one regularly employed assistant in the dental office; Dr. Del Gaiso has four assistants. (N.T. of 10/7/92 ZBA hearing at 5; R.R. at 139A.) However, even though this argument is palpably correct because the facts are

abundantly clear from the testimony of Dr. Del Gaiso himself that he employed four assistants, Mr. Aquaro did not raise this issue until his appeal before this Court; therefore, it is waived. *Fatzinger v. City of Allentown*, 140 Pa.Cmwlth. 62, 591 A.2d 369 (1991), *petition for allowance of appeal denied*, 529 Pa. 653, 602 A.2d 862 (1992).

We also note that Dr. Del Gaiso's dental practice does not conform to the requirement of Section 14–203(1)(c)(.4), which states that the office "shall not be used by any colleagues or associates." Opening statements by Dr. Del Gaiso's attorney indicate that the previous owner of the property practices dentistry on the property on Thursdays. (N.T. of 10/7/92 ZBA hearing at 5; R.R. at 139A.) However, since this issue was also not raised, we will not address it.

10. Mr. Aquaro, in his reply brief, counters that the standing issue has been waived. We do not agree. The City raised the standing issue in its brief filed with the common pleas court in response to Mr. Aquaro's appeal after the April 28, 1994 opinion of the ZBA (ZBA's decision after remand). (The City's brief to Court Common Pleas at 9; R.R. at 183A–85A.)

ZBA to the court of common pleas because he was not "aggrieved," since he was not adversely affected by the order of the ZBA.

■ Section 14–1807 of the Code sets forth who has a right to appeal decisions of the ZBA. It provides in part:

(1) Any person or person jointly or severally aggrieved by any decision of the Board, or any taxpayer ... may appeal by presenting to the Court of Common Pleas a Notice of Appeal....

(Section 14–1807 of the Code.) A person aggrieved is one who has a direct interest in the adjudication and is adversely affected by it, *Nernberg v. City of Pittsburgh,* 153 Pa. Cmwlth. 219, 620 A.2d 692 (1993), and to have a direct interest, the person must demonstrate that the adjudication causes harm to one of his interests. *Id.*

■ Here, Mr. Aquaro has a direct interest in the adjudication because his property abuts the property at issue in this case, and, therefore, he had standing to appeal the court of common pleas. *See A.R.E. Lehigh Valley v. Zoning Hearing Board of Upper Macungie Township,* 139 Pa.Cmwlth. 361, 590 A.2d 842 (1991).

Additionally, Mr. Aquaro was clearly a party in the proceeding before the ZBA for he was represented by counsel, who cross-examined the witnesses, and he testified as an objector. *Naimoli v. Zoning Hearing Board of the Township of Chester,* 56 Pa. Cmwlth. 337, 425 A.2d 36 (1981). As a party to the adjudication, Mr. Aquaro is aggrieved by the adverse decision of the ZBA. *Active Amusement v. Zoning Board of Adjustment,* 84 Pa.Cmwlth. 538, 479 A.2d 697 (1984); *Baker v. Zoning Hearing Board of West Goshen Township,* 27 Pa.Cmwlth. 602, 367 A.2d 819, 822–23 (1976) ("Having appeared and participated as a party before the Board, Mrs. Baker was necessarily aggrieved by the adverse decision of the Board. To hold otherwise would reduce to a nullity for purposes of the appeal obtaining the status of a party before zoning hearing boards.") Accordingly, Mr. Aquaro had standing to appeal the ZBA's decision to the court of common pleas and to this Court.

### USE VARIANCE

■ Mr. Aquaro argues that Dr. Del Gaiso is in violation of Section 14–203(1)(c)(.1) which permits a property owner to maintain a dental office at his property as an accessory use so long as he resides on the property.

Although neither the ZBA nor the court of common pleas addressed this issue, it is absolutely clear that Dr. Del Gaiso's dentist office is in violation of the Ordinance; moreover he presented no evidence whatsoever to support a finding that a variance should be granted on the basis of unnecessary hardship.

The fact is, Dr. Del Gaiso no longer resides at the property, (4/28/94 ZBA opinion, Finding of Fact No. 8), and there was no evidence presented that would demonstrate that he meets the requirements for a variance. No testimony was even offered that, due to an unnecessary hardship, Dr. Del Gaiso was unable to reside at the property. Dr. Del Gaiso testified that he had "lived at [the property] for two years. And [his] wife and [he had] just recently moved." (N.T. of 10/7/92 ZBA hearing at 17; R.R. at 151A.) There was no finding of fact that the property cannot be used for the permitted uses enumerated under the Code. *Compare Borough of Latrobe v. Sweeney,* 17 Pa.Cmwlth. 356, 331 A.2d 925 (1975) (a variance to the zoning requirement, that a dentist must reside on the property to operate a dental practice there, was not granted even though financial difficulties prevented him from completing the renovations to the dwelling area of his building).[11] We

---

11. In *East Torresdale v. Zoning Board of Adjustment of Philadelphia County,* 536 Pa. 322, 639 A.2d 446 (1994), the owner of the property while maintaining a dentist's office, never resided on the property. The zoning code required, *inter alia,* that the practicing dentist reside at the property and that only one dentist practice at the property. The owner applied for a variance to use the property as a dental office with two dentists, himself and a second dentist who would reside on the property. The Supreme Court held that an unnecessary hardship existed because the cost of converting the property into a residence for the owner (and his family of seven) would be prohibitive, as opposed to the cost of constructing a dwelling for the second dentist.

*East Torresdale* is inapposite to the instant case because in *East Torresdale,* one of the dentists

find that Dr. Del Gaiso, as a matter of law, has failed to demonstrate the requisite unnecessary hardship.[12]

## DIMENSIONAL VARIANCE

Mr. Aquaro also argues that substantial evidence does not exist to support the grant of a variance to maintain the one-story addition and to use the garage as office space,[13] because Dr. Del Gaiso failed to prove "unnecessary hardship." Before the ZBA, Dr. Del Gaiso testified that the hardship of his property was caused by the fact that the office space was inadequate for the proper treatment of his patients, many of whom are not ambulatory. He further testified that the addition and use of the garage as a handicap entrance[14] and additional treatment room was required under the provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213.

The ZBA agreed with Dr. Del Gaiso, concluding that unnecessary hardship exists because the variance sought was needed "so that the property [could] conform with the mandates set forth by the [ADA]; the property must provide adequate ingress and egress to pediatric patients with disabilities." (4/28/94 ZBA opinion, Conclusion of Law No. 8; R.R. at 32A.) The court of common pleas also based its decision on Dr. Del Gaiso's desire to comply with the ADA. The court stated:

Now, there are several reasons, but what this case really boiled down to during the argument was whether or not there was substantial evidence for the [ZBA's] conclusion on the issue of unnecessary hardship. I thought there was....

The difference, I think, comes down to what role, if any, should the [ADA] play in determining the presence or absence of unnecessary hardship.

I assign it a modest role. [Mr. Aquaro] believes that a serious inquiry into the [ADA] itself would lead one to conclude that the changes proposed to be made by the dentist in this case are not in fact necessary or could be handled in a different manner than the one proposed....

I don't think it's proper for the ZBA to get involved in collateral inquiries of that type. It's enough for the ZBA to know that the proposed alterations are at least arguably required by the federal law designed to assist people suffering with disabilities which, of course, include the doctor's patients.

(N.T. of 6/8/94 court of common pleas hearing at 4–5; R.R. at 15A.)

A variance may be granted when the strict application of an ordinance results in an unnecessary hardship peculiar to the subject property, and provided that the variance will not adversely affect the public health, safety, or welfare. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983). Further, an applicant has a heavy burden and vari-

who would be practicing on the property would reside on the property. In the instant case, Dr. Del Gaiso does not intend to reside at the property, nor would any other dentist reside there. Furthermore, Dr. Del Gaiso actually resided at the property for two years and requiring him to live on the property in order to maintain his dental practice, is not an unnecessary hardship.

12. During the 10/7/92 hearing before the ZBA, Dr. Del Gaiso's attorney introduced into evidence a variance granted on August 1, 1956, (N.T. of 10/7/92 ZBA hearing at 5; R.R. at 138A.), which permitted a doctor's office and three family dwellings to exist on the property. Dr. Del Gaiso apparently assumed that he could continue using his property as an office while not residing on the property because his predecessor had acquired this variance. (N.T. of 3/9/94 ZBA hearing at 13, 19, 37; R.R. at 95A, 100A, 119A.) Of course, the assumption was incorrect. For two

years, Dr. Del Gaiso complied with the requirements of Section 14–302(1)(c) of the Code when he resided on the property. The use of his property then was conforming under Section 14–203(1)(c). However, when Dr. Del Gaiso moved his residence from the property, his use became non-conforming, and he needed to obtain a variance to use the property in this non-conforming manner. Although variances run with the land, the 1956 variance did not grant a variance as to the residential requirement. (R.R. at 80A.) *See Green v. Zoning Board of Adjustment of the City of Pittsburgh,* 88 Pa.Cmwlth. 469, 490 A.2d 488 (1985).

13. Section 14–203(1)(d) of the Code permits property owners to use a garage as an accessory use, not a principal office.

14. The entrance to the garage has a portable ramp to allow for wheelchair access.

ances are granted sparingly and only under exceptional circumstances. *Isaacs v. Wilkes–Barre,* 148 Pa.Cmwlth. 578, 612 A.2d 559 (1992).

> In order to demonstrate unnecessary hardship, the applicant must show that the physical characteristics of the property are such that either (1) it could not in any case be used for any permitted purpose, or (2) it can be arranged for that purpose only at prohibitive expense, or (3) it has either no value or only distress value for any purpose permitted by the ordinance.

*Hill District Project Area v. Zoning Board,* 162 Pa.Cmwlth. 323, 638 A.2d 278, 280–81 (1994).

█ This Court finds that the evidence Dr. Del Gaiso offered was, as a matter of law, insufficient for a finding of hardship. There is no reference to zoning in the ADA, nor is there any case law which indicates that the ADA should be applied in a zoning context.[15] Although not binding on this Court, case law does exist to the contrary, *i.e.,* that the ADA should not be applied in a zoning context. *Moyer v. Lower Oxford Township,* 1993 WL 5489 (E.D.Pa., No. 92–3348, filed January 6, 1993) (denial of a variance to an applicant, who wanted to use a property as a group home for disabled persons, from the zoning requirement that permitted only a limited number of non-related persons to reside together property, does not violate the ADA, because the ADA is inapplicable)[16]; *see also Robinson v. The City of Friendswood,* 890 F.Supp. 616 (S.D.Texas 1995).

In *Robinson,* Mr. Robinson applied for a variance so that he could maintain the carport that had been built onto his house. The carport exceeded the setback requirements of the applicable zoning ordinance. Mr. Robinson, who was found to be disabled under 42 U.S.C. §§ 12131(2) and 12102(2), claimed that he needed the carport because he needed a dry surface from which to exit and enter his car, because due to his disability he was prone to falling. The court held that "the ADA ... makes no reference to municipal zoning.... [and] a city zoning ordinance does not fall within the definition of 'public services, programs, or activities,' [under 42 U.S.C. § 12132, which services are required to *conform* with the ADA standards]." *Robinson,* 890 F.Supp. at 619–20. Section 12132 of the ADA provides in part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of that disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Based on this persuasive authority, we hold that a variance is not required to be granted per se where a property owner desires to conform with the ADA.

Additionally, even if the ADA were applicable in zoning areas, all the ADA requires is that "reasonable accommodations" through "reasonable modifications" be made, which does not mean that the "best" accommodation is required. *See* 42 U.S.C. § 12182(b)(1)(A). It may be arguable that Dr. Del Gaiso might have to make some "reasonable modifications" to his present office,[17] but there was no finding of fact that the additional rooms and use of the garage as a waiting room was such a "reasonable accommodation." Most important, there was no finding by the ZBA that Dr. Del Gaiso was unable to make modifications that would provide access to his present office for his disabled patients without violating the Code.

---

**15.** This does not mean that a zoning ordinance which discriminates or gives less rights to the disabled cannot be successfully challenged as being facially discriminatory or discriminatory in its application. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). However, reasonable governmental limitations, such as, "neutral" zoning ordinances, may continue as long as all citizens are treated the same. *See id.*

**16.** *Moyer* is an unpublished opinion. Although Section 414 of the Internal Operating Procedures of this Court prohibit the use of unreported cases in our decisions, since *Moyer* is a federal decision, it may be cited here. *See* Fed. 3rd Circuit Local Appellate Rule 28.3.

**17.** Professional offices of health care providers must comply with the ADA. 42 U.S.C. § 12181(7)(F).

██ It is readily apparent that the additional rooms and the garage are not used solely for complying with the ADA, that is, as an access route for disabled patients. The additional space was to be used as a waiting room, a handicap entrance, a dark room, and two additional treatment rooms as was presented on the plot plan, which was followed to completion. (3/9/94 ZBA hearing at 11; R.R. at 93A.) It is obvious that the additional space will be used to increase the office space, thus, allowing more patients to be treated.

The facts in our case are strikingly similar to those in *Heisterkamp v. Zoning Hearing Board of the City of Lancaster*, 34 Pa. Cmwlth. 539, 383 A.2d 1311 (1978), where a physician requested a variance to construct an additional waiting room to provide proper service to his patients, many of whom were in wheelchairs or on crutches. We held that his hardship was essentially one of economics, in that he had outgrown his present office space and thus a denial of a variance was proper. Likewise, we find that Dr. Del Gaiso failed to prove unnecessary hardship. Dr. Del Gaiso admitted that he could operate his practice in a limited capacity before the additions were made. (N.T. of 3/9/94 ZBA hearing; R.R. at 105A.)

Accordingly, we reverse the ZBA's grant of a variance to maintain the addition and to use the garage as an office.

### ORDER

NOW, March 28, 1996, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby reversed.